UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MANUEL FORTE CUETO,

        Petitioner,

    v.

WARDEN ALLIGATOR
ALCATRAZ, KELIE WALKER,
SECRETARY KRISTI NOEM,
ACTING DIRECTOR TODD M.
LYONS, ATTORNEY GENERAL
PAMELA BONDI,

        Respondents.

Case No. 2:26-cv-733-KCD-NPM

/

## **ORDER**

Petitioner Manuel Forte Cueto is a Cuban national who arrived in the United States in 1972. He was a lawful permanent resident until his green card was revoked following a final order of removal. (Doc. 9-2.)[1] Cueto was previously detained from September 8, 1999, until July 28, 2000, after which he was released on an order of supervision. (Doc. 9-4.)

On January 9, 2026, ICE encountered Cueto and detained him once more. (Doc. 9-1 at 2, 4.) A few weeks later, ICE served Cueto with a Notice of Removal to Mexico. (Doc. 9-6.) Months later, ICE served him with a Notice of Revocation of Release, stating that circumstances had changed and his

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

removal was significantly likely in the near future.   (Doc. 12-1.) He was afforded an informal interview on the day he was detained and again on April 3, 2026. (*See* Doc. 9-5 at 3; Doc. 12-1.) This lawsuit seeking a writ of habeas corpus followed. (Doc. 5.) For the reasons below, the petition is **DENIED WITHOUT PREJUDICE**.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The Government first claims that two provisions of the INA—8 U.S.C. §§ 1252(g) and (b)(9)—preclude federal jurisdiction. This Court has already addressed these precise arguments and rejected them for the same reasons they fail today. *See Obando-Vargas v. Assistant Dir.*, No. 2:26-CV-265-KCD-

NPM, 2026 WL 796804, at *1-2 (M.D. Fla. Mar. 23, 2026). The Court thus turns to the merits.

### A. Substantive Due Process (Counts I, II)

Invoking the Fifth Amendment, Cueto claims that he has been detained beyond the bounds of what substantive due process allows. (Doc. 5 at 22-31.) The Fifth Amendment protects noncitizens during deportation proceedings. At the same time, however, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation

3

happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal order and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at \*7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Cueto cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. Under the rules, ICE may revoke a noncitizen's release to effectuate removal. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, the Government revoked Cueto's release specifically to enforce his outstanding removal order. Returning him to custody thus serves a recognized, legitimate government objective.

Nor are we at the constitutional danger zone. ICE detained Cueto on January 9, 2026. He has been in custody for less than six months. That is short of the indefinite, limbo-like detention that the Supreme Court has rejected under the Fifth Amendment. *See Zadvydas v. Davis*, 533 U.S. 678 (2001). Instead, it falls within the six-month window the *Zadvydas* Court deemed presumptively reasonable to carry out a deportation. *Id.* at 701 (holding that executive agencies may not hold noncitizens longer than six months when removal is not foreseeable and stating, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing").

Seemingly recognizing this temporal problem, Cueto's habeas petition jumps to the burden-shifting framework, arguing that his removal to Cuba is not likely. (Doc. 5 at 27-30.) First, the Government is attempting to remove him to Mexico, not Cuba. And second, this argument puts the cart before the horse. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL

5

1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

Cueto attempts another workaround. He points to earlier periods of detention, arguing that the Court should aggregate his past and present stints in ICE custody. (Doc. 5 at 23-25.) By combining these distinct periods of confinement, Cueto contends that his total time in civil immigration detention exceeds the six-month threshold, which he asserts is sufficient to rebut the presumption of reasonableness and trigger *Zadvydas* review. This Court has already addressed these arguments and rejected them for the same reasons they fail today. *See Rodriguez v. U.S. Immigr. and Customs Enf't*, No. 2:26-CV-1043-KCD-DNF, 2026 WL 1156079, at *2-3 (M.D. Fla. Apr. 29, 2026).

Finally, Cueto argues that the six-month reasonable detention period is cumulative, starting when his removal order became final back in 1999. (Doc. 5 at 22-23.) Using that calculus, the six-month period has long since passed.

This argument makes little sense. *Zadvydas* was aimed at the severe, physical deprivation of liberty that comes from sitting in a jail cell indefinitely. The Court "used the words 'detain' and 'custody' to refer exclusively to physical confinement and restraint." *Jennings*, 583 U.S. at 311. Against that backdrop, it is illogical to run a clock designed to prevent indefinite imprisonment while a person is out living freely in the community.

"Because *Zadvydas* clearly involved *detention* of a petitioner during the presumptively reasonable period, it defies common sense to suggest that *Zadvydas* time can run while a petitioner is not in custody." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011). The six-month clock measures actual lockup, not supervised freedom. *See Akinwale*, 287 F.3d at 1052 ("[I]n order to state a claim under *Zadvydas* the alien ... must show post-removal order *detention* in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (emphasis added).)

As the Supreme Court has long recognized, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. So the executive branch gets a presumptively reasonable six-month runway to do its job, negotiate with foreign governments, and execute a final removal order. *Zadvydas*, 533 U.S. at 701. Because Cueto remains inside that window, his current custody does not cross the line into the kind of indefinite, arbitrary lockup the Fifth Amendment forbids. Until that clock actually runs out, the Government retains the constitutional authority to hold him.

## B. Procedural Due Process (Count III)

Cueto turns next to the procedural mechanics of his re-detention. He claims that ICE's decision to revoke his supervision violated the Fifth

Amendment's guarantee of procedural due process. (Doc. 5 at 31-35.) The Court cannot agree. To understand why, start with the baseline reality of Cueto's legal status. He is a noncitizen subject to a final, unexecuted order of removal who has been convicted of several felonies. His release on supervision was a matter of administrative grace born of logistical necessity, not a permanent constitutional entitlement. When the Government determines that circumstances have changed and it is finally time to carry out its removal order, the Constitution does not demand a full-dress, pre-deprivation trial. Due process, as the Supreme Court has often reminded us, is flexible. It "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

In the context of revoking a noncitizen's supervised release and detaining him, like here, ICE's regulations strike that constitutional balance by guaranteeing written notice and an informal interview that allows the individual to respond. *See* 8 C.F.R. §§ 241.4(l)(1), 241.13(i).[2] According to the unrebutted record, Cueto received both. (*See* Doc. 9-5 at 3; Doc. 12-1.) He got exactly what the Fifth Amendment requires in this context—notice and a meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

---

[2] Because the Government previously released Cueto after determining that there was no significant likelihood of his removal, the regulation governing his return to custody here is 8 C.F.R. § 241.13(i). More on this below.

Cueto pivots to its timing. He claims that the Government unlawfully detained him without a signed notice of revocation of release and only provided a signed notice months after his detention. (Doc. 16 at 5.) Because his liberty is at stake, he insists the agency's regulations strictly mandate pre-deprivation notice—essentially, a heads-up before taking him back into custody. (*Id.*)

Again, the Court is not convinced. Section 241.13(i) guarantees a noncitizen the opportunity to respond to the reasons for revocation, but it nowhere promises advance warning or a pre-arrest hearing. Executing the arrest first and providing the necessary notice and procedural machinery afterward is entirely consistent with the regulatory text. *See* 8 C.F.R. § 241.13(i)(3) ("*Upon revocation*, the alien will be notified of the reasons for revocation of his or her release." (emphasis added).) And that sequencing is no accident. In the practical reality of immigration enforcement, mailing a noncitizen a formal invitation to their own arrest would virtually guarantee they disappear. To eliminate that flight risk, § 241.13(i)(3) justifiably permits the Government to secure the person first, provided it delivers the necessary notice and an opportunity to be heard after they are detained. Demanding pre-deprivation process here does not just rewrite the regulation; it ignores the operational realities the regulation was designed to navigate. *See, e.g., Grigorian*, 2025 WL 2604573, at *8.

The Constitution guarantees a fair process, not a favorable result. Because ICE afforded Cueto the requisite notice and an opportunity to be heard, his procedural due process claim fails.

Cueto also argues that his clean supervision record precludes ICE from revoking his release. (Doc. 5 at 34-35.) This argument too fails. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. 8 C.F.R. § 241.13(i)(2). And the government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, the Government revoked Cueto's release specifically to enforce his outstanding removal order, gave him notice that they were doing so, and afforded him an informal interview. Returning him to custody thus serves a recognized, legitimate government objective and was done in compliance with the INA.

### C. *Accardi* Doctrine (Count IV)

Cueto does not rely solely on the Constitution. He also brings a claim under the *Accardi* doctrine. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The premise of that doctrine is straightforward: "an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979). "[A]gency deviation from its own regulations

10

and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984). And it "goes without saying that ICE, like all government agencies, must follow its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025).

His claims boil down to a familiar grievance: the Government ignored its own regulations. (Doc. 5 at 35.) He alleges that ICE locked him back up without providing the required notice or an interview after his return to custody. (*Id.* at 36-37.) He also claims that his revocation is void because the official who signed the paperwork lacked the authority to do so. (*Id.* at 37-40.) Finally, he claims that Respondents failed to initiate the required post-revocation records review and to notify Cueto of his interview. (*Id.* at 41-42.) By ignoring the agency's rulebook, the logic goes, the Government short-circuited his constitutional rights. (*Id.*)

Cueto complains that under 8 C.F.R. § 241.4, Respondents failed to provide a revocation signed by the proper official. (Doc. 5 at 38.) He insists this technicality voids the entire revocation. *See* 8 C.F.R. § 241.4(l)(2); *cf. Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025) ("[U]nder § 241.4(l)(2), the officials with the power to revoke release after making certain findings include field office directors and any other officials delegated the function or authority ... for a particular geographic district, region, or area.").

11

But there is a fundamental problem with this point: Cueto is reading the wrong regulation. He was originally released back in 2000 because his removal to Cuba was not reasonably foreseeable. That puts his case on a different regulatory track, one governed by 8 C.F.R. § 241.13. When the Government decides it is time to again detain someone on that specific track, it must follow the revocation procedures set forth in § 241.13. *See Choy v. Woosley*, No. 4:25-CV-197-DJH, 2026 WL 324601, at *3 (W.D. Ky. Feb. 6, 2026). The Government acknowledges that § 241.13 applies in the Notice of Revocation. (*See* Doc. 12-1.)

Section 241.13 contains no rigid signature requirement limiting revocation authority to field office directors or other specific high-ranking officials. It simply says the agency can revoke an order of supervision if changed circumstances mean removal is now significantly likely. Cueto never identifies how the Government failed to comply with the regulations or who should have signed the revocation notice. *See Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation."). So on this point, Cueto has shown no error.

Section 241.13 requires a specific procedural safeguard once a noncitizen is returned to custody: an "informal interview." 8 C.F.R. § 241.13(i)(3). That interview is designed to give the individual a meaningful

12

chance to respond to the agency's reasons for revoking his conditional liberty. *See Kem v. Noem*, No. 3:25CV997 DRL-SJF, 2026 WL 100566, at *4 (N.D. Ind. Jan. 14, 2026). And as already established, the Government provided such an interview twice. Cueto has shown no *Accardi* violation.

Finally, Cueto argues that Respondents failed to initiate the required post-revocation records review and to notify Cueto of his interview as required by 8 C.F.R. 241.4(l)(3). (*Id.* at 41-42.) Again, Cueto invokes the wrong regulation.

### D. Ultra Vires

Finally, Cueto declares that "there is no statute, constitutional provision, or other source of law that authorizes Respondents to detain Petitioner," so he asks the Court to enjoin their ultra vires actions. (Doc. 5 at 43.) But he offers no facts, cites no law, and provides no analysis to explain why ICE's actions supposedly fall outside its statutory authority. This appears to be simply a catch-all for the claims that the Court has already rejected above.

### III. Conclusion

Cueto has not been detained long enough to transform his authorized custody into a due process violation under *Zadvydas*. And his remaining arguments—whether grounded in administrative technicalities or the like— do not warrant habeas relief. The Government is actively working to execute

his removal, and it has cleared the necessary regulatory hurdles to keep him in custody while it does so. Because his current detention remains lawful, the Amended Petition for Writ of Habeas Corpus (Doc. 5) is **DENIED WITHOUT PREJUDICE**. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions, and close the case.

ORDERED in Fort Myers, Florida on May 26, 2026.

Kyle C. Dudek
United States District Judge

14